UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CYNTHIA B. GRICE** | * | |
| | * | |
| Plaintiff, | * | Civil action No.: |
| | * | |
| v. | * | Section: |
| | * | |
| **ISI ALARMS NC, INC.** and | * | Magistrate: |
| **TRANS UNION, LLC** | * | |
| | * | |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### COMPLAINT AND DEMAND FOR JURY TRIAL

#### I.     Introduction

1. This is the Complaint brought by an individual consumer under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.,* against defendants ISI Alarms NC, Inc. and Trans Union, LLC, as well as federal common law fraud and pendent state law claims for civil fraud, invasion of privacy and intentional infliction of emotional distress against defendant ISI Alarms NC, Inc.

#### II.     Jurisdiction and Venue

2. This Court has jurisdiction pursuant to 15 U.S.C. § 1681p, and 28 U.S.C. §§ 1331 and 1337.  Venue is proper in this Court as the events described herein resulted in injury in Tangipahoa Parish, Louisiana.

### III.  Parties

3. Plaintiff, Cynthia B. Grice (hereinafter, "Grice") is a natural person who resides in Tangipahoa Parish, Louisiana, and is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).  The Plaintiff's maiden name is Cynthia Bennett, and she went by Cynthia Maggio until she remarried in July 2010.  She has gone by Grice since that time.

4. Defendant ISI Alarms NC, Inc. (hereinafter, "ISI") is a North Carolina corporation authorized to do and doing business in the State of Louisiana, and is a person who furnishes credit information to consumer reporting agencies under the FCRA, 15 U.S.C. § 1681s-2.

5. Defendant Trans Union, LLC (hereinafter, "Trans Union") is a consumer-reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).  Trans Union is a foreign corporation authorized to do and doing business in the State of Louisiana.

### IV.  Factual Allegations

6. Grice owns a home at 19317 Rolling Pines Road in Amite, Louisiana.  She does not live at the house, however, as her father, Vincent Bennett resides there as his primary residence.  Mr. Bennett, while not an adjudicated incompetent, suffers from age-related dementia-like symptoms, yet insists on living alone.

7. Some time in early 2011, defendant ISI cold-called Mr. Bennett and convinced him to purchase an alarm system for the house at 19317 Rolling Pines Road in Amite, Louisiana (hereinafter, the "Property").

8. On April 19, 2011, an ISI representative came to the Property and installed a residential alarm system in the house. At that time, Mr. Bennett signed two documents: a Schedule of Protection for the purchase of the alarm itself, as well as an Alarm Monitoring Agreement, in which Mr. Bennett agreed to make 60 monthly monitoring installment payments of $41.99. Copies of these documents are attached hereto as Exhibits 1 and 2.

9. Prior to signing Exhibits 1 and 2, Mr. Bennett explained to the ISI technician that he was not the owner of the Property, but that his daughter, Cynthia Maggio in fact owned the home. The ISI technician stated that was not a problem and instructed Mr. Bennett to ignore the section in Exhibit 1 "[T]o Be Completed By Customer Only" and directed Mr. Bennett to sign his daughter's name above his own. Mr. Bennett signed "Cynthia Maggio" above his own signature, and the ISI technician thanked him for the business and left.

10. On May 31, 2012, Grice received a call from her father asking Grice for the last four digits of her social security number, as he was having technical problems with his new alarm system and that the monitoring company, Monitronics Security LP (hereinafter, "Monitronics"), needed to verify his identity before discussing the account. Grice informed her father that she never gave such information out and would look into the matter for him.

11. That same night, at 8:15 pm, Grice called Monitronics and spoke with representative Rose Marie, who also asked Grice for the last four digits of her social security number. Grice again replied that she never gave that information out, but Rose Marie informed

Grice that they not only had the last four digits, they had the entire number, as it was listed on a monitoring contract provided to them by ISI.

12. On June 1, 2012, Grice called ISI and spoke with a representative who identified herself as Erin. After informing Grice that ISI would not remove her personal credit information from their system, confirm that she was not responsible for any agreement, or otherwise liable in any way for the alarm system or the five-year monitoring contract, Grice asked to speak to Erin's supervisor. Shortly thereafter, ISI representative Tina came on the line and after hearing Grice's statement that she did not execute any contract with ISI and/or Monitronics, Tina stated that there was nothing Grice could do about the situation other than suing her own father fraud. Tina also informed Grice that if ISI did not receive the contract payments, ISI would report the delinquent account to a debt collection agency and that Grice would be liable for a total of $3,862.61.

13. Less than two hours later, Grice contacted the Tangipahoa Parish Sheriff's Office ("TPSO") and submitted a formal complaint against ISI. This complaint led to a subsequent investigation by the TPSO, who also referred Grice to the Louisiana Office of the State Fire Marshall, the state regulator who oversees alarm companies, including ISI. Grice subsequently filed formal complaints with the State Fire Marshall and the Louisiana State Attorney General.

14. On June 8, 2012, Grice received a call from her father stating an ISI technician was at the Property fixing the malfunctioning alarm system. Grice asked her father to put the technician on the phone and spoke to an ISI technician who identified himself as Brett.

Brett responded to Grice's direct question and confirmed that ISI did not require a social security number on an installation or an installment contract.

15. On July 12, 2012, Grice corresponded with Ricky Roubique, the Deputy Fire Marshal with the Licensing Section of the Louisiana Office of the State Fire Marshall; Deputy Roubique had been assigned to investigate Grice's complaint against ISI. Deputy Roubique informed Grice that he had asked for, and received copies of relevant documents from ISI. Included in ISI's production were copies of the Schedule of Protection and Alarm Monitoring Agreement, of which original copies are referenced herein as Exhibits 1 and 2. Unlike Exhibits 1 and 2, however, the copies ISI produced to the State Fire Marshall contain significant alterations. Notably, in ISI's version of Exhibit 1, the section entitled "To Be Completed By Customer Only" is filled in, whereas Exhibit 1 is not. And ISI's version of Exhibit 2 includes Grice's social security number, whereas Exhibit 2 does not. Deputy Roubique passed this information along to James Seago of the Louisiana Attorney General's Office and suggested a deeper investigation.

16. After spending most of July (futilely) prosecuting her complaint against ISI with the Better Business Bureau, Mr. Bennett forwarded to Grice, two letters from GE Capital Retail Bank, one dated July 26, 2012, and the other dated July 31, 2012. The letters are attached hereto as Exhibits 3 and 4. Both letters are addressed to Cynthia Maggio at the Property address, and they both reference a recent application for credit.

17. Concerned, Grice contacted GE Capital Retail Bank, and the bank confirmed that someone applied for an Amazon.com store credit card using Grice's social security number, and that the applicant had used the following email address as contact

information: cindymaggio15@yahoo.com.  Grice asked the bank to provide a copy of the application and then immediately filed another police report with the TPSO.

18. Researching the application for credit in her name, Grice discovered that a credit card number listed on the application referenced the Bank of Hazlehurst in Georgia.  Grice contacted the bank and was informed that while the prefix on the account number was indeed a Bank of Hazlehurst account, the actual account number was bogus and did not correspond to any account open or closed.

19. Also listed on the GE Capital Retail Bank application for credit was the Internet Protocol (IP) address from which the application originated.  Grice discovered that IP address 64.128.73.90 was hosted by TW Telecom in Charlotte, North Carolina.  Grice contacted TW Telecom, but was told that she could not be given the name of such IP address owner without a subpoena or court order.  Grice passed this information along to Deputy Roubique, the TPSO and the Attorney General's office.

20. By letter from WebBank, c/o Bill Me Later, Inc. dated August 14, 2012, addressed to Cynthia Maggio at Grice's actual address, Grice discovered that someone had again attempted to secure credit in her name.  A copy of this letter is attached hereto as Exhibit 5.  Grice immediately filed a third police report with the TPSO.

21. Panicked that her credit was being used and/or destroyed by someone, on August 22, 2012, Grice reviewed her credit reports from all three credit-reporting agencies, subsequently writing to all three credit-reporting agencies and asking to have a security freeze placed on her respective accounts, as someone was attempting to procure credit in her name.

22. Upon review of her Trans Union report, Grice discovered that Trans Union was reporting that it had provided a copy of Grice's credit report to ISI, as well as to GE Capital Retail Bank. And while the Trans Union report was mailed to Grice's actual home address, the report indicated that the information GE Capital Retail Bank provided when it requested Grice's credit report was the Property address. Grice again discovered that the application for credit originated from IP address 64.128.73.90, she notified Deputy Roubique, the TPSO and the Attorney General's office accordingly.

23. On September 20, 2012, Grice was notified by Deputy Roubique by email that he had received a response to the subpoena served to Time-Warner Telecom by the TPSO. Said response confirmed that IP subscriber 64.128.73.90 was ISI Alarms NC, Inc. Deputy Roubique further stated that he spoke with ISI Owner/CEO Jayson Waller on September 18, 2012 and that Mr. Waller declared that ISI obtained Grice's social security number from the credit report they pulled on her. He elaborated that it is normal ISI practice when a customer refuses to list a social security number on an alarm contract themselves.

24. Terrified of an ongoing conspiracy being perpetrated by ISI, on September 13, 2012, Grice wrote to Trans Union again notifying them about the identity theft, and demanding that the ISI inquiry be removed from her report, as she did not want any third party to falsely believe that she was in any way doing business with ISI.

25. On September 26, 2012, Detective Michael Christmas of the TPSO notified Grice that he had contacted the Mooresville (North Carolina) Police Department, in whose jurisdiction the applications for credit originated (i.e. ISI), and was informed that the TPSO's information would be forwarded to the investigation unit of that police department.

26. Weeks later, Grice received another copy of her Trans Union credit report, dated September 28, 2012. Such report did not reflect her requested security freeze, and the ISI inquiry was still present and did not appear disputed whatsoever. However, the report no longer showed the GE Capital Retail Bank inquiry; Grice subsequently learned that on August 30, 2012, GE Capital Retail Bank had unilaterally requested that its inquiry be removed from Grice's credit history.

27. On October 8, 2012, Grice called and spoke with a Trans Union representative and demanded that a security freeze be placed on her Trans Union account to reflect the ongoing identity theft and/or conspiracy. Then, on November 1, 2012, Grice procured yet another copy of her Trans Union credit report, this time the security freeze appears and shows it going into effect on October 8, 2012, the day Grice spoke to Trans Union. But the ISI inquiry remained undisputed.

28. Trans Union prepared and issued consumer credit reports concerning Grice that included inaccurate information. Trans Union also provided Grice's consumer report to at least two companies without Grice's permission. Further, Grice told Trans Union that she disputed the accuracy of the information it was reporting and that she was a victim of identity theft. Trans Union did not respond to Grice's disputes as required by the FCRA. Trans Union continued to report inaccurate information on Grice after receiving her disputes.

29. Trans Union issued credit reports on Grice for transactions that did not involve her.

### First Claim for Relief
**(Willful Noncompliance with FCRA against ISI)**

30. Grice realleges paragraphs 1 – 29 as though fully set forth herein.

31. The Fair Credit Reporting Act, 15 U.S.C. § 1681b describes all permissible purposes for which a consumer's credit report may be obtained.  Section 1681b(f)(1) makes clear that a person is prohibited from using or obtaining a consumer report unless it is obtained for use in accordance with one such permissible purpose.

32. ISI obtained Grice's consumer report under false pretenses.  Specifically, ISI pulled Grice's consumer report without Grice's knowledge or permission by deceiving Grice's aged father.  ISI then used such consumer report to obtain Grice's social security number and used that information to apply for credit in Grice's name.

33. Defendant ISI willfully failed to comply with the requirements of the FCRA, 15 U.S.C. § 1681b(f)(1).

34. 15 U.S.C. § 1681n(a)(1)(B) describes the civil remedies available to consumers whose consumer report was obtained under false pretenses or knowingly without a permissible purpose; they include actual damages or $1,000, whichever is greater, punitive damages, attorney's fees and costs.

35. As a result of ISI's willful failure to comply with the requirements of the FCRA, Grice has suffered, and continues to suffer, actual damages, including lost opportunity to receive credit, damage to reputation, invasion of privacy, interference with her normal and usual activities and emotional distress for which Grice seeks damages in an amount to be determined by the jury, in addition to statutory damages in an amount to be determined by the Court.  Grice also seeks punitive damages in an amount to be determined by the jury.

36. Grice requests attorney's fees pursuant to 15 U.S.C. § 1681n(a)(1)(B)(3).

## Second Claim for Relief

### (Federal Common Law Fraud Against ISI)

37. Grice realleges paragraphs 1 – 29 as though fully set forth herein.

38. Federal common law fraud consists of five elements: "(1) a false representation (2) in reference to a material fact (3) made with knowledge of its falsity (4) and with the intent to deceive (5) with action taken in reliance upon the representation." *Pence v. United States*, 316 U.S. 332, 338, 62 S.Ct. 1080, 1083, 86 L.Ed. 1510 (1941).

39. By first obtaining Grice's social security number under false pretenses, ISI was able to falsely represent itself to be Grice in applying for credit to GE Capital Retail Bank and Bill Me Later.  GE Capital Retail Bank was then provided Grice's consumer report by Trans Union in reliance on ISI's false representation.  Upon information and belief, the same is true for Bill Me Later.  These actions are in addition to the fraudulent action of placing Grice's ill-gotten social security number onto its version of Exhibit 2 after the original installation of the alarm into the Property.

40. ISI's federal common law fraud has caused damages to Grice for which she seeks all damages available under federal law.

## Third Claim for Relief

### (Civil Fraud and Louisiana Civil Code Article 3546)

41. Grice realleges paragraphs 1 – 29 as though fully set forth herein.

42. Like federal common law fraud, the State of North Carolina has five elements to its

actual fraud jurisprudence, which are: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. *See Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E.2d 494 (1974); *Dallas v. Wagner*, 204 N.C. 517, 168 S.E. 838 (1933).

43. By first obtaining Grice's social security number under false pretenses, ISI subsequently falsely represented itself to be Grice in applying for credit to GE Capital Retail Bank and Bill Me Later. GE Capital Retail Bank was then provided Grice's consumer report by Trans Union in reliance on ISI's false representation. Upon information and belief, the same is true for Bill Me Later. These actions are in addition to the fraudulent action of placing Grice's ill-gotten social security number onto its version of Exhibit 2 after the original installation of the alarm into the Property.

44. Louisiana Civil Code Article 3546 permits Louisiana courts to impose punitive damages when the injurious conduct occurred in a state that authorizes punitive damages in its courts. In this case, the fraudulent conduct at issue occurred in North Carolina. And Chapter 1D § 1D-15(a)(1) of the North Carolina General Statutes calls for punitive damages when fraud is proven in a North Carolina court. This Court may then award punitive damages in this case for fraudulent conduct that occurred in North Carolina.

45. As a result of ISI's fraudulent conduct, Grice has suffered, and continues to suffer, actual damages, including lost opportunity to receive credit, damage to reputation, invasion of privacy, interference with her normal and usual activities and emotional distress for which Grice seeks damages in an amount to be determined by the jury. Grice also seeks punitive damages in an amount to be determined by the jury.

### Fourth Claim for Relief

### (Intentional Infliction of Emotional Distress against ISI)

46. Plaintiff realleges paragraphs 1 – 29 as though fully set forth herein.

47. Defendant ISI engaged in extreme and outrageous conduct in first deceiving Grice's elderly father into providing enough of Grice's personal information for ISI to obtain Grice's consumer report, then it engaged in even more reprehensible conduct when it then used Grice's social security number to apply for credit in Grice's name using an email address likely created just for this purpose.

48. As a result of ISI's intentional infliction of emotional distress, Grice has suffered, and continues to suffer, actual damages, including invasion of privacy, interference with her normal and usual activities, damage to reputation, emotional distress worry, fear, frustration, embarrassment, and humiliation, for which she seeks damages, including both general and special damages, in an amount to be determined by the jury. Grice also seeks punitive damages in an amount to be determined by the jury.

### Fifth Claim for Relief

### (Invasion of Privacy against ISI)

49. Grice realleges paragraphs 1 – 29 as though fully set forth herein.

50. Defendant ISI engaged in unreasonably coercive methods in its attempt to sell an alarm system and accompanying monitoring contract.  ISI knew in fact that Grice was not liable in any way for these, as evidenced by ISI's listing of Grice's social security number onto a contract after it was allegedly executed.  ISI invaded Grice's privacy by fraudulently obtaining her social security number and then using it to apply for credit.

51. As a result of ISI's invasion of privacy, Grice has suffered, and continues to suffer, actual damages, including damage to reputation, invasion of privacy, interference with her normal and usual activities, emotional distress, worry, fear, frustration, embarrassment, and humiliation for which Grice seeks damages, including both general and special damages, in an amount to be determined by the jury. Grice also seeks punitive damages in an amount to be determined by the jury.

### Sixth Claim for Relief
**(Negligent Noncompliance with FCRA against Trans Union)**

52. Grice realleges paragraphs 1 – 29 as though fully set forth herein.

53. Trans Union negligently failed to comply with the requirements of FCRA.

54. As a result of Trans Union's failure to comply with the requirements of FCRA, Grice has suffered, and continues to suffer, actual damages, including lost opportunity to receive credit, damage to reputation, invasion of privacy, interference with her normal and usual activities and emotional distress for which Grice seeks damages in an amount to be determined by the jury.

55. Grice requests attorneys' fees pursuant to 15 USC §1681o(a).

WHEREFORE, Grice respectfully requests that the Court grant the following relief in her favor as follows:

1. Actual damages to be determined by the jury;
2. General and special damages to be determined by the jury;
3. Punitive damages to be determined by the jury;
1. Statutory damages to be determined by the Court;
2. Attorneys' fees;

3. Costs and expenses incurred in the action; and
4. Such other and further relief as is appropriate.

PLAINTIFF DEMANDS A TRIAL BY JURY.

DATED this 30th day of November, 2012.

                                                  PATRICK MILLER LLC

                                                  /s/ *Marc R. Michaud*
                                                  Marc R. Michaud, La. Bar No. 28962
                                                  400 Poydras Street, Ste. 1680
                                                  New Orleans, LA 70130
                                                  (504) 680-4318 (Telephone)
                                                  (504) 527-5456 (Facsimile)
                                                  mmichaud@patrickmillerlaw.com (Email)