UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CYNTHIA B. GRICE | * | |
| | * | |
| Plaintiff, | * | Civil Action No.: 12-2873 |
| | * | |
| v. | * | Judge: Eldon E. Fallon |
| | * | |
| ISI ALARMS NC, INC., MONITRONICS | * | Magistrate: Karen Wells Roby |
| INTERNATIONAL, INC. and | * | |
| SCOTTSDALE INSURANCE COMPANY | * | |
| | * | |
| Defendants. | * | |

*******************************************

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

NOW INTO COURT, comes Plaintiff Cynthia B. Grice ("Grice") and files her Memorandum in Support of her Motion for Partial Summary Judgment against Defendant Scottsdale Insurance Company (hereinafter, "Scottsdale"). For reasons stated herein, the Court should grant the Motion.

**I.   Introduction**

The instant Motion for Partial Summary Judgment consists of a simple question of law: whether Scottsdale has a duty to defend its insured, co-Defendant ISI Alarms NC, Inc. (hereinafter, "ISI"). To determine whether Scottsdale must defend ISI, the Court must look to the allegations in the underlying complaint, and "liberally" compare those allegations to the relevant provisions of the insurance policy(ies) at issue[1]. As long as those facts alleged in the complaint "disclose even a possibility of liability under the policy, the insurer is obligated to

---

[1] *See Carnival Brands, Inc. v. American Guarantee & Liability Ins. Co.*, 98-958 (La. App. 5 Cir. 1/26/99); 726 So.2d 496, 500.

1

provide a defense[2]." And an insurer's duty to defend is much broader than its duty to indemnify[3].

In the instant matter, Grice makes myriad allegations against ISI in the Amending and Supplemental Complaint that "disclose even a possibility of liability under the policy[4]." In particular, Grice highlights ISI's former Owner/CEO Jayson Waller September 18, 2012 response to the Tangipahoa Parish Sheriff's Office, as well as his sworn deposition testimony of July 29, 2013, as they reflect ISI's normal policy of obtaining customer Social Security numbers without their permission or consent. In no uncertain terms, Grice has alleged, and ISI's former Owner/CEO has admitted that ISI violated Grice's privacy by obtaining and using her Social Security number without a permissible purpose. Accordingly, even if some of Grice's claims or allegations might not be covered, Scottsdale must nonetheless defend the entire suit[5].

## II. Facts and Procedural History

On September 18, 2013, DSFM (Deputy State Fire Marshall) Ricky Roubique spoke with ISI Chief Executive Officer Jayson Waller regarding alterations to the contracts signed by Ms. Grice's father after he had executed them. Mr. Waller informed Deputy Roubique that upon receiving the date of birth of a homeowner, ISI pulls a credit report from which the Social Security number is obtained, said number is then placed on the contract by ISI when the homeowner forgets or declines to do so themselves. In his deposition, Mr. Waller confirmed this aspect of Deputy Roubique's account: when asked why a Social Security number would be added to a contract after the customer declined to do so, Mr. Waller responded: "The technician

---

[2] *Id.*
[3] *See e.g. Jensen v. Snellings*, 841 F.2d 600, 612 (5th Cir. 1988).
[4] See Amending and Supplemental Complaint (Rec. Doc. No. 78).
[5] *See Coleman v. School Bd. Of Richland Parish*, 418 F.3d 511, 523 (5th Cir. 2005); *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009).

comes up – the technicians don't work in our office, we don't have our hand on them.  So I don't want that information floating around, but in order to sell the contract to Monitronics, we have a printed credit report we send up.  We put their social on the contract and mail it to Monitronics[6]."

Attempting to clarify ISI's routine policy, Mr. Waller corrected several responses to prior written discovery requests and confirmed that ISI regularly obtained customers' (and Grice's specifically) consumer credit reports without Social Security numbers, which then provided ISI with said customers' (and Grice's) Social Security numbers, which in turn get added to the monitoring contracts after the fact[7].  Specifically, after confirming that he participated in the formulation of ISI's responses to Grice's Requests for Admission, Mr. Waller testified as follows:

Q. I'm going to go through these (Plaintiff's Requests for Admission), a few of these.  Let's start with number 10.

Can you please read the request and then your response.

A. "Please admit that an ISI employee entered plaintiff's Social Security number on the alarm monitoring agreement signed by Vincent Bennett.  Denied."

Q. Is that true?

A. No.  Someone would have added it and sent it to Monitronics if that's the copy we have, yes.  So that would be false.

\*\*\*

---

[6] *See* Deposition of William Jayson Waller, relevant portions of which are attached hereto as Exhibit 1, at pp. 28-29.
[7] *See id.* at 45-48.

Q. And the next one.

A. "Please admit that ISI requested a copy of plaintiff's consumer report from TransUnion. ISI did not have plaintiff's Social Security number[8]." That says denied, but we didn't have it, we used her date of birth. We got it after.

Q. So it should have been admitted?

A. Yes, I would assume so. We pulled the credit without it though. We don't ever ask for socials.

Q. Right. Well, the request says, "Admit that when ISI requested a copy of plaintiff's consumer report from Transunion, LLC, ISI did not have the plaintiff's Social Security number."

And that is?

A. We didn't when we obtained the report, but after we got the report, we did. So I guess that's maybe the confusion of the question. To get the credit report, we did not have it. After we got the credit report, we had it.

\*\*\*

Q. And number 15?

A. "Please admit ISI added plaintiff's Social Security to the alarm monitoring agreement signed by Mr. Vincent Bennett after obtaining it from TransUnion." That should be admitted."

---

[8] The actual Request read: "Admit that when ISI requested a copy of plaintiff's consumer report from Transunion, LLC, ISI did not have the plaintiff's Social Security number."

    Q.    But was it?

    A.    It says denied.

    Q.    Did you see these before they were signed and sent out?

    A.    Yes.[9]

On November 6, 2013, this Court reopened the instant case after a policy of insurance was discovered that may conceivably provide coverage for some or all of the allegations Grice made in her prior Complaint[10]. Following the filing of Grice's Amending and Supplemental Complaint[11] and the addition of Scottsdale Insurance Company as co-Defendant herein, Grice requested and received a copy of the insurance polic(ies)(hereinafter, the "Policy") at stake in this Motion[12]. The Policy provides A Coverage for Bodily Injury and Property Damage[13]. It also provides Coverage B for Personal and Advertizing Injury[14]. Personal and Advertizing Injury is defined as follows:

"Personal and advertizing injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a.    False arrest, detention or imprisonment;

    b.    Malicious prosecution;

    c.    The wrongful eviction from, wrongful entry into, or invasion of the right to private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

---

[9] *Id*.
[10] *See* Rec. Doc. 77.
[11] Rec. Doc. No. 78.
[12] *See* Policy, attached hereto as Exhibit 2.
[13] *See* Exhibit 2 at p. 9.
[14] *See id*, at p. 14.

    d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f.    The use of another's advertizing idea in your own "advertisement"; or

    g.    Infringing upon another's copyright, trade dress or slogan in your "advertisement[15]."

Furthermore, the Policy excludes coverage for some specific issues, including the Distribution of Material in Violation of Statutes such listed as the Telephone Consumer Protection Act (TCPA), the CAN-SPAM Act of 2003, and "any statute, ordinance or regulation . . . that prohibits or limits the sending, transmitting or distribution of material or information[16]. And the Policy also includes an endorsement entitled the "Recording and Distribution of Material or Information in Violation of Law Exclusion" that purports to qualify the preceding exclusion to include (thereby excluding) the Fair credit Reporting Act[17].

Moreover, Grice also alleges that ISI engaged in common law and civil fraud, as well as intentional infliction of emotional distress. In particular, Grice stated that as "a result of ISI's fraudulent conduct, Grice has suffered, and continues to suffer, actual damages, including lost opportunity to receive credit, damage to reputation, invasion of privacy, interference with her normal and usual activities and emotional distress for which Grice seeks damages in an amount to be determined by the jury[18]." In short, Grice has made multiple factual allegations and

---

[15] *Id.* at p. 22.
[16] *See id.* at p. 15.
[17] *See id.* at p. 25.
[18] Amending and Supplemental Complaint, at ¶ 56.

corresponding causes of action for both intentional conduct, negligence, and conduct that ISI believed to be legal but was not.

### III.  Law and Argument

ISI undoubtedly invaded Grice's privacy in a number of ways.  Some were intentional acts taken with knowledge, constructive or actual, of their wrongfulness.  Others were routine business practices of ISI that its own principal failed to recognize as inappropriate.  Yet still others may have been garden-variety violations of Grice's privacy that may not amount to violations of federal law, but which are nonetheless violative of the State laws pled by Grice herein.  ISI also engaged in intentional conduct that caused Grice bodily injury and/or property damage.  What cannot be disputed, therefore, is that under any liberal reading of the polic(ies) at issue herein, there is more than a mere possibility of liability, and as such, Scottsdale must defend ISI throughout this entire matter.  This Court should rule accordingly.

A.  Summary Judgment Standard.

Summary judgment under Federal Rule of Civil Procedure 56, is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[19]."  No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented[20].  And while all reasonable inferences are drawn in favor of the nonmoving party, "unsupported

---

[19] Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Evans v. City of Houston*, 246 F.3d 344, 347-48 (5th Cir. 2001).
[20] *National Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 712 (5th Cir.1994) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584–88, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)).

7

allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment[21]."

In deciding whether there is a duty to defend, courts liberally construe the allegations of the complaint to determine whether they set forth grounds that bring the claims within the scope of the insurer's duty to defend the suit[22]. The insurer has a duty to defend unless the allegations of the complaint as applied to the policy unambiguously preclude coverage[23]. If the complaint discloses even a possibility of liability under the policy, the insurer is obligated to provide a defense[24]. Any ambiguity in an insurance contract is construed against the insurer[25].

The insurer must defend the entire suit even if some claims or allegations might not be covered[26]. It is "well settled that the insurer's obligation to defend a suit against its insured, whether groundless or not, must be measured by the allegations contained in the complaint rather than by the outcome of the suit[27]." Most importantly, any ambiguities in the insurance policy must be interpreted liberally in favor of coverage[28].

B.  Ms. Grice's Right to Privacy and the Fair Credit Reporting Act.

The Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"), was enacted in part "to insure that consumer reporting agencies exercise their grave responsibilities with fairness,

---

[21] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985)
[22] *See Carnival Brands, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 726 So.2d 496, 500 (La. App. 5th Cir. 1999).
[23] *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872–73 (5th Cir. 2009), *citing Elliott v. Cont'l Cas. Co.*, 949 So.2d 1247, 1250 (La. 2007).
[24] *Martco*, 588 F.3d at 872–73, *citing Meloy v. Conoco Inc.*, 504 So.2d 833, 839 (La. 1987).
[25] *Martco*, 588 F.3d at 872.
[26] *Coleman v. School Bd. of Richland Parish*, 418 F.3d 511, 523 (5th Cir. 2005). *See also Jensen v. Snellings*, 841 F.2d 600, 612 (5th Cir. 1988) ("Even though the main thrust of a complaint falls outside policy coverage, all factual allegations are considered in determining the duty to defend, and if there are any facts which, when taken as true, support a claim for which coverage is not unambiguously excluded, then the duty to defend arises.").
[27] *Bandy v. Avondale Shipyards, Inc.*, 458 F.2d 900, 904 (5th Cir. 1972). *See also, Adams v. Frost*, 990 So.2d 751, 756 (La. App.2d Cir. 2008), for application of Louisiana's eight corners rule, whereby the four corners of the complaint are compared with the four corners of the policy to determine whether or not there exists a duty to defend. This determination is made without resort to extrinsic evidence. *Martco*, 588 F.3d at 872.
[28] *See e.g. Borden, Inc. v. Howard Trucking Co., Inc.*, 454 So.2d 1081, 1090 (La. 1983).

impartiality, and a respect for the consumer's right to privacy[29]." The FCRA makes clear that a person is prohibited from using or obtaining a consumer credit report unless it is obtained for use in accordance with one of a set of enumerated permissible purposes[30]. The person obtaining the consumer report must intend to use the information contained in the report (1) in connection with a credit transaction involving the consumer, (2) for employment purposes, (3) in connection with the underwriting of insurance involving the consumer, (4) in connection with a determination of the consumer's eligibility for a license or benefit granted by a governmental instrumentality, (5) for assessment of the risks associated with an existing credit obligation, or (6) for other legitimate business needs[31].

>  And Louisiana Constitution of 1974, Article I, section 5 provides:

> Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.

The Louisiana Supreme Court has recognized that the right of privacy embraces four different interests:

> (1) The appropriation of an individual's name or likeness for the use or benefit of the

---

[29] *See* 15 U.S.C. § 1681(a)(4); *see also Safeco Ins. Co. of America v. Burr*, 127 S.Ct. 2201, 2205 (2007) ("Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."); *Perry v. First Nat. Bank*, 459 F.3d 816, 825 n. 2 (7th Cir.2006) ("[T]he FCRA is designed to protect the privacy of consumers' credit histories...."); *Castro v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1045–46 (7th Cir.2005) ("In an attempt to achieve this balance between consumer privacy and the needs of a modern, credit-driven economy, [FCRA] 'limit[s] the furnishing of consumer reports' to certain statutorily enumerated purposes."); *Trans Union Corp v. FTC*, 245 F.3d 809, 818 (D.C.Cir.2001) (concluding that the government's interest in enacting FCRA, "protecting the privacy of consumer credit information," was substantial); *Fernandez v. Retail Credit Co.*, 349 F.Supp. 652, 653 (E.D. La. 1972).
[30] 15 U.S.C. § 1681b(f)(1).
[31] 15 U.S.C. §1681b(a)(3)(A)-(F).

defendant;

    (2) Where the defendant unreasonably intrudes upon the plaintiff's physical solitude or seclusion;

    (3) Publicity which unreasonably places the plaintiff in a false light before the public; and

    (4) An unreasonable public disclosure of embarrassing private facts[32].

Where an individual has a right under one or more of these four interests, "other members of society have a corresponding duty not to violate that right[33]." In ascertaining whether individuals have a reasonable expectation of privacy that is constitutionally protected, a court must determine not only whether the individual has an actual or subjective expectation of privacy, but whether that expectation is also of a type which society at large is prepared to recognize as being reasonable[34]. Ergo, both the Federal and the State statutes concern themselves with the protection of citizens' private credit information from the intrusion by unrelated parties.

    In this case, even assuming *arguendo* that Grice's claims under the FCRA are excluded, despite their not all being the types of privacy claims associated with the dissemination and publication to third parties, Grice still states a cause of action under Louisiana law that is not explicitly excluded. To wit, in addition to attempting to exclude violations of the FCRA, the Policy excludes any statute, ordinance or regulation "that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material information[35]." In other words, this provision clearly seeks to exclude claims concerning the publication of private information, as opposed to the acquisition of such

---

[32] *Joubert v. Crowley Post-Signal, Inc.*, 375 So.2d 1386, 1388 (La. 1979).
[33] *Id.* at 1388-89.
[34] *Angelo Iafrate Const., LLC v. State, Dept. of Transp & Devel.*, 03-0892, pp. 5-6 (La.App. 1 Cir. 5/14/2004), 879 So.2d 250, 255, writ denied, 04-1442 (La. 9/24/2004), 882 So.2d 1131.
[35] Exhibit 2, at p. 25.

information. But here, Grice's primary claim under the FCRA is ISI's obtaining of her Social Security number without a permissible purpose. The fact that ISI later used this number to alter a contract and to apply for credit in Grice's name only exacerbates its liability, it does not change the character of ISI's primary violation. So too then does ISI intrude upon Grice's solitude or seclusion – violates her privacy – by obtaining her Social Security number without her permission. In any event, it is clear by the terms of the Policy itself, in conjunction with the allegations Grice makes in her Amending and Supplemental Complaint, that Scottsdale owes ISI a duty to defend this case.

C.  Fraud and Intentional Infliction of Emotional Distress.

Grice alleged that ISI engaged in federal common law fraud, civil fraud and intentional infliction of emotional distress. As a result, Grice alleges that she "suffered, and continues to suffer, actual damages, including lost opportunity to receive credit, damage to reputation, invasion of privacy, interference with her normal and usual activities and emotional distress[36]." However, the Policy explicitly excludes "'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured[37]." Accordingly, Grice presumes for purposes of this Motion that Scottsdale rejected ISI's request for coverage premised in whole or in part on such intentional conduct exclusion.

In the context of a homeowner's insurance policy, "bodily injury" includes humiliation, extreme and keen mental anguish and pain[38]. And damage to one's reputation constitutes "property damage" for purposes of insurance coverage because "a person's reputation is his

---

[36] Amending and Supplemental Complaint, at ¶ 56.
[37] Exhibit 2, at p. 10.
[38] *See Lees v. Smith*, 363 So.2d 974, 980 (La. App. 3 Cir. 1978).

property, perhaps the most valuable thing he possesses[39]." Importantly, courts have "repeatedly held with regard to intentional tort exclusions in insurance policies that when the act is intentional, but the injury is not, the exclusionary clause is not applicable[40]."

Here, Grice alleged that ISI engaged in myriad fraudulent and intentionally wrongful conduct, but according to ISI's Chief Executive Officer, none was intended to specifically damage Grice or her father. Rather, even if ISI were able to isolate the individual or individuals within their organization that attempted to open credit in Grice's name, or opened the Yahoo! email account in her name, these illegal actions were likely taken for said individual'(s) personal gain, with no thought whatsoever given to how such conduct affected Grice. But in any event, as with the personal and advertizing injuries she sustained as a result of ISI's policy of obtaining customer Social Security numbers and subsequently altering contracts, Grice alleges that ISI's invasion of privacy caused her "damage to reputation, invasion of privacy, interference with her normal and usual activities, emotional distress, worry, fear, frustration, embarrassment, and humiliation[41]." Accordingly, Scottsdale must defend ISI in this action because Grice has posited more than mere speculative injuries and damage attributable to Scottsdale's insured, indeed, Grice has alleged more than a mere possibility of coverage.

### VI. Conclusion

This Court should grant Grice's Motion for Partial Summary Judgment because as a matter of law, Grice has alleged sufficient facts to disclose more than a mere possibility of

---

[39] *Id.*, citing *Snowden v. Pearl River Broadcasting Corp.*, 251 So.2d 405 (La.App. 1 Cir. 1971), writ refused; *Kennedy v. Item Co.*, 213 La. 347, 34 So.2d 886 (1948); *Simpson v. Robinson*, 104 La. 180, 28 So. 908 (1900); *Joiner v. Weeks*, —- So.2d —- (La.App. 3 Cir. 1978 Docket No. 6396).
[40] *Williamson v. Historic Hurtsville Ass'n*, 556 So.2d 103, 108 (La. App. 4 Cir. 1990).
[41] Amending and Supplemental Complaint, at ¶ 62.

liability under the Policy.  Whether it be through bodily injury or property damage, or whether ISI's conduct constitutes personal and advertising liability, Scottsdale must defend its insured under the liberal analysis this Court must produce.  And because any ambiguities in the Policy must be interpreted in favor of coverage, it is clear that this Court should grant Grice's Motion for Partial Summary Judgment.


DATED this 11th day of March, 2014.		PATRICK MILLER LLC

/s/ *Marc R. Michaud*
Marc R. Michaud, La. Bar No. 28962
400 Poydras Street, Ste. 1680
New Orleans, LA 70130
(504)  (Telephone)
(504) 267-1656 (Facsimile)
mmichaud@patrickmillerlaw.com (Email)


### CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of March, 2014, I served a copy of the foregoing on all parties of record via electronic service through the Electronic Service Filing system and/or by U.S. Mail, facsimile, or overnight mail.

Executed this 11th day of March, 2014.

s/ *Marc R. Michaud*
Marc R. Michaud